## Case No. 18,250.

### CHARGE TO GRAND JURY.

[2 Curt. 637.]

### Circuit Court, D. Massachusetts. June 7, 1854.

OBSTRUCTING PROCESS—FEDERAL AND STATE LAWS —PRINCIPAL AND ACCESSORY.

[1. The criminal laws of the United States are to be enforced by the federal judiciary, including grand juries summoned by the federal courts, without any regard to the criminal laws of the state in which the court is sitting, or the nature of the crime under the state laws.]

[2. The act of April 30, 1790 (1 Stat. 112), making it a misdemeanor to willfully obstruct, resist, or oppose an officer of the United States in serving or executing any process or warrant, embraces every legal process whatsoever, whether issued by a court in session or by a judge or magistrate, or commissioner acting in the due administration of any law of the United States.]

[3. To constitute the offense of obstructing the service of process under this statute, it is not necessary that the accused shall have used or even threatened active violence. Any obstruction to the free action of the officer or his lawful assistants, willfully placed in his or their way, is sufficient. If a multitude of persons should assemble, even in a public highway, with the design to stand together and thus prevent the officer from passing freely along the way in the execution of his precept, and he should thus be hindered or obstructed, this would, of itself, and without any active violence, be an obstruction, within the meaning of the law.]

[4. In cases of misdemeanor, not only those who are present, participating in the act, but those who, though absent when the offense was committed, did procure, counsel, command, or abet others to commit it, are indictable as principals.]

[5. Language addressed to persons who immediately afterwards commit an offense, if actually intended by the speaker to incite those addressed to commit it, and adapted thus to incite them, is such a counseling or advising to the crime as the law contemplates, and the person so inciting is liable to indictment as a principal.]

CURTIS, Circuit Justice (charging grand jury). The preceding part of the charge related to certain offences under the acts of congress against the slave-trade; the court being informed by the district-attorney that a complaint on that subject was to be laid before the grand-jury. The court was also informed by that officer that it was his intention to lay before the grand-jury, which had then been summoned for the May term, recent occurrences which had resulted in an attack made on the marshal of the United States, for this district, while holding in his custody an alleged fugitive from service, and the homicide of one of the assistants of the marshal. In reference to these occurrences, the following part of the charge was given. No indictment growing out of them was returned at the May term. When the grand-jury for the next term, (October, 1854,) had been summoned and impanelled, the district-attorney again informed the court that it was his intention to lay these occurrences before them. And, after giving them instructions on other subjects, the court informed the jury that its views concerning the law of the United States against the obstruction of legal process, having theretofore been fully expressed; and the district-attorney, who was their legal adviser, having, as the court understood, a copy of those remarks, it was not deemed needful to say any thing further on the subject; but that if the jury should desire any instruction concerning any point of law which might arise in the course of their duties, such instruction would be given, at any time, on their application. Indictments for misdemeanors in obstructing legal process, were returned by the grand-jury. The disposition thereof will appear, by reference to the case of U. S. v. Stowell [Case No. 16,409].

There is another criminal law of the United States to which I must call your attention, and give you in charge. It was enacted on the 30th of April, 1790 (1 Stat. 117), and in the following words: "If any person shall knowingly or wilfully obstruct, resist, or oppose any officer of the United States in serving, or attempting to serve or execute any mesne process, or warrant, or any rule or order of any of the courts of the United States, or any other legal or judicial writ or process whatever, or shall assault, beat, or wound any officer, or other person, duly authorized in serving or executing any writ, rule, order, process, or warrant aforesaid, every person so knowingly and wilfully offending in the premises shall, on conviction, be imprisoned not exceeding twelve months, and fined not exceeding three hundred dollars." You will observe, gentlemen, that this law makes no provision for a case where an officer, or other person duly authorized, is killed by those unlawfully resisting him. That is the case of murder, and is left to be tried and punished under the laws of the state within whose jurisdiction the offence is committed. Over that offence against the laws of the state of Massachusetts we have here no jurisdiction. It is to be presumed that the duly constituted authorities of the state will, in any such case, do their duty, and if the crime of murder has been committed, will prosecute and punish all who are guilty.

Our duty is limited to administering the laws of the United States; and by one of those laws, which I have read to you; to obstruct, resist, or oppose, or beat, or wound any officer of the United States, or other person duly authorized, in serving or executing any legal process whatsoever, is an offence against the laws of the United States, and is one of the subjects concerning which you are bound to inquire. It is not material that the same act is an offence both against the laws of the United States and of a particular state. Under our system of government, the United States and the several states are distinct sovereignties, each having its own system of criminal law, which it administers in its own tribunals; and the criminal laws of a state can in no way affect those of the United States. The offence, therefore, of obstructing legal process of the United States is to be inquired of and treated by you as a misdemeanor, under the act of congress which I have quoted, without any regard to the criminal laws of the state, or the nature of the crime under those laws. This act of congress is carefully worded, and its meaning is plain. Nevertheless, there are some terms in it, and some rules of law connected with it, which should be explained for your guidance. And first, as to the process, the execution of which is not to be obstructed. The language of the act is very broad. It embraces every legal process whatsoever, whether issued by a court in session, or by a judge, or magistrate, or commissioner, acting in the due administration of any law of the United States. You will probably experience no difficulty in understanding and applying this part of the law. As to what constitutes an obstruction—it was, many years ago decided by Mr. Justice Washington, that, to support an indictment under this law, it was not necessary to prove that the accused used, or even threatened active violence. Any obstruction to the free action of the officer, or his lawful assistants, wilfully placed in his or their way, for the purpose of thus obstructing him, or them, is sufficient. And it is clear, that, if a multitude of persons should assemble, even in a public highway, with the design to stand together and thus prevent the officer from passing freely along the way, in the execution of his precept, and the officer should thus be hindered or obstructed, this would, of itself, and without any active violence, be such an obstruction as is contemplated by this law. If to this be added, use of any active violence, then the officer is not only obstructed, but he is resisted and opposed, and of course the offence is complete, for either of them is sufficient to constitute it.

If you should be satisfied that an offence against this law has been perpetrated, you will then inquire by whom? and this renders it necessary for me to instruct you concerning the kind and amount of participation which brings individuals within the compass of this law.

And first, all who are present and actually obstruct, resist, or oppose, are of course guilty. So are all who are present, leagued in the common design, and so situated as to be able, in case of need, to afford assistance to those actually engaged, though they do not actually obstruct, resist, or oppose. If they are present for the purpose of affording assistance in obstructing, resisting, or opposing the officers, and are so situated as to be able, in any event which may occur, actually to aid in the common design, though no overt act is done by them, they are still guilty under this law. The offence defined by this act is a misdemeanor; and it is a rule of law, that whatever participation in a case of felony, would render a person guilty, either as a principal in the second degree, or as an accessory before the fact, does, in a case of misdemeanor, render him guilty as a principal; in misdemeanors all are principals. And therefore, in pursuance of the same rule, not only those who are present, but those who, though absent when the offence was committed, did procure, counsel, command, or abet others to commit the offence, are indictable as principals. Such is the law, and it would seem that no just mind could doubt its propriety. If persons having influence over others, use that influence to induce the commission of crime, while they themselves remain at a safe distance, that must be deemed a very imperfect system of law which allows them to escape with impunity. Such is not our law. It treats such advice as criminal, and subjects the giver of it to punishment, according to the nature of the offence to which his pernicious counsel has led. If it be a case of felony, he is by the common

law an accessory before the fact, and by the laws of the United States and of this state is punishable to the same extent as the principal felon. If it be a case of misdemeanor, the adviser is himself a principal offender and is to be indicted and punished as if he himself had done the criminal act. It may be important for you to know, what in point of law, amounts to such an advising or counselling another as will be sufficient to constitute this legal element in the offence. It is laid down by high authority that though a mere tacit acquiescence, or words, which amount to a bare permission, will not be sufficient, yet such a procurement may be, either by direct means, as by hire, counsel, or command, or indirect, by evincing an express liking, approbation, or assent to another's criminal design. From the nature of the case the law can prescribe only general rules on this subject. My instruction to you is, that language addressed to persons who immediately afterwards commit an offence, actually intended by the speaker to incite those addressed to commit it, and adapted thus to incite them, is such a counselling or advising to the crime as the law contemplates, and the person so inciting others is liable to be indicted as a principal.

In the case of Com. v. Bowen, 13 Mass. 359, which was an indictment for counselling another to commit suicide, tried in 1816, Chief Justice Parker, instructing the jury, and speaking for the supreme court of Massachusetts, said: "The government is not bound to prove that Jewett would not have hung himself, had Bowen's counsel never reached his ear. The very act of advising to the commission of a crime is of itself unlawful. The presumption of law is that advice has the influence and effect intended by the adviser, unless it is shown to have been otherwise; as that the counsel was received with scoff, or was manifestly rejected and ridiculed at the time it was given. It was said in the argument, that Jewett's abandoned and depraved character furnishes ground to believe that he would have committed the act without such advice from Bowen. Without doubt he was a hardened and depraved wretch; but it is in man's nature to revolt at self-destruction. When a person is predetermined upon the commission of this crime, the seasonable admonitions of a discreet and respected friend would probably tend to overthrow his determination. On the other hand, the counsel of an unprincipled wretch, stating the heroism and courage the self-murderer displays, might induce, encourage, and fix the intention, and ultimately procure the perpetration of the dreadful deed; and if other men would be influenced by such advice, the presumption is that Jewett was so influenced. He might have been influenced by many powerful motives to destroy himself. Still the inducements might have been insufficient to procure the actual commission of the act, and one word of additional advice might have turned the scale."

When applied, as this ruling seems to have been here applied, to a case in which the advice was nearly connected in point of time, with the criminal act, it is, in my opinion, correct. If the advice was intended by the giver, to stir or incite to a crime, if it was of such a nature as to be adapted to have this effect, and the persons incited immediately afterwards committed that crime, it is a just presumption that they were influenced by the advice or incitement to commit it. The circumstances or direct proof may, or may not, be sufficient to control this presumption; and whether they are so, can duly be determined in each case, upon all its evidence.

One other rule of law on this subject is necessary to be borne in mind. The substantive offence to which the advice or incitement applied must have been committed; and it is for that alone the adviser or procurer is legally accountable. Thus if one should counsel another to rescue one prisoner, and he should rescue another, unless by mistake; or if the incitement was to rescue a prisoner, and he commit a larceny, the inciter is not responsible. But it need not appear that the precise time, or place, or means advised, were used. Thus if one incite A. to murder B., but advise him to wait until B. shall be at a certain place at noon, and A. murders B. at a different place in the morning, the adviser is guilty. So if the incitement be to poison, and the murderer shoots, or stabs. So if the counsel be to beat another, and he is beaten to death, the adviser is a murderer; for having incited another to commit an unlawful act, he is responsible for all that ensues upon its execution. These illustrations are drawn from cases of felonies, because they are the most common in the books and the most striking in themselves; but the principles on which they depend are equally applicable to cases of misdemeanor. In all such cases, the real question is, whether the accused did procure, counsel, command, or abet the substantive offence committed. If he did, it is of no importance that his advice or directions were departed from in respect to the time, or place, or precise mode or means of committing it.

Gentlemen,—the events which have recently occurred in this city, have rendered it my duty to call your attention to these rules of law, and to direct you to inquire whether in point of fact the offence of obstructing process of the United States has been committed; if it has, you will present for trial, all such persons as have so participated therein as to be guilty of that offence. And you will allow me to say to you that if you or I were to begin to make discriminations between one law and another, and say this we will enforce and that we will not enforce, we should not only violate our oaths, but so far as in us lies, we should destroy the liberties of our country, which rest for their basis upon the great principle that our country is governed by laws constitutionally enacted, and not by men. In one part of our country the extradition of fugitives from labor is odious; in another, if we may judge from some transactions, the law concerning the extradition of fugitives from justice has been deemed not binding; in another still, the tariff laws of the United States were considered oppressive, and not fit to be enforced. Who can fail to see that the government would cease to be a government if it were to yield obedience to these local opinions? While it stands, all its laws must be faithfully executed, or it becomes the mere tool of the strongest faction of the place and the hour. If forcible resistance to one law should be permitted practically to repeal it, the power of the mob would inevitably become one of the constituted authorities of the state, to be used against any law or any man obnoxious to the interests and passions of the worst or most excited part of the community; and the peaceful and the weak would be at the mercy of the violent. It is the imperative duty of all of us concerned in the administration of the laws, to see to it that they are firmly, impartially, and certainly applied to every offence, whether a particular law be by us individually approved or disapproved. And it becomes all to remember, that forcible and concerted resistance to any law is civil war, which can make no progress but through bloodshed, and can have no termination but the destruction of the government of our country, or the ruin of those engaged in such resistance. It is not my province to comment on events which have recently happened. They are matters of fact, which, so far as they are connected with the criminal laws of the United States, are for your consideration. I feel no doubt that, as good citizens and lovers of our country, and as conscientious men, you will well and truly observe and keep the oath you

have taken, diligently to inquire and true presentment make of all crimes and offences against the laws of the United States given you in charge.